FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

2013 SEP -9 P 3:30

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| COMMONWEALTH OF VIRGINIA *ex rel.* HUNTER LABORATORIES, LLC and CHRIS RIEDEL, an individual,<br><br>Plaintiff,<br><br>v.<br><br>QUEST DIAGNOSTICS INCORPORATED, QUEST DIAGNOSTICS NICHOLS INSTITUTE f/k/a QUEST DIAGNOSTICS, INC., QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC., LABORATORY CORPORATION OF AMERICA, LABORATORY CORPORATION OF AMERICA HOLDINGS, and SPECIALTY LABORATORIES, INC., et al.,<br><br>Defendants. | CIVIL ACTION NO. _____<br><br>1:13CV1129<br>GBL/TCB |

## QUEST DIAGNOSTICS INCORPORATED, QUEST DIAGNOSTICS NICHOLS INSTITUTE, AND QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC.'S NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1331, 1367, 1441, 1446 and other applicable law, Defendants Quest Diagnostics Incorporated, Quest Diagnostics Nichols Institute, and Quest Diagnostics Clinical Laboratories, Inc. (collectively, "Quest") hereby file this Notice of Removal of the above-captioned case. Quest respectfully asserts the following facts to support removal, and in so doing, expressly reserves all other issues for further pleadings.

1

## PROCEDURAL HISTORY

1. Quest are named as defendants in *Commonwealth of Virginia ex rel. Hunter Laboratories, LLC and Chris Riedel v. Quest Diagnostics Incorporated, et al.*, Case No. 2007-15379, filed in the Circuit Court of Fairfax County, Virginia (the "State Court Action").[1]

2. Chris Riedel and Hunter Laboratories, LLC ("Relators") filed, under seal, a *qui tam* Complaint in the State Court Action on or about December 19, 2007 on behalf of the Commonwealth of Virginia, pursuant to the required sealing provisions under § 8.01-216.5. The Complaint seeks relief including treble damages, civil penalties, and costs and attorneys' fees for Quest's alleged violation of the Virginia Fraud Against Taxpayers Act, § 8.01-216.1 *et seq.* ("VFATA").

3. The Commonwealth of Virginia has declined to intervene in the State Court Action, indicating the Commonwealth's decision not to proceed in litigating the claims alleged in the Complaint. Relators are thus permitted to proceed independently on behalf of the Commonwealth under the *qui tam* provisions of the VFATA.

4. Defendant Quest Diagnostics Clinical Laboratories, Inc. was served with a Summons and the Complaint on August 8, 2013. Defendant Quest Diagnostics Incorporated was

---

[1] Three additional defendants have been named in the Complaint, Laboratory Corporation of America, Laboratory Corporation of America Holdings (collectively, "LabCorp") and Specialty Laboratories, Inc. ("Specialty"). Quest understands that Specialty has not yet been served with a summons and Complaint in the State Court Action, but that when it is served it will consent to removal and file a joinder to this notice of removal. Additionally, Quest understands that LabCorp was served with a summons and Complaint in the State Court Action several days after Quest was served. While LabCorp has not joined in this removal notice, Quest understands from conversations with LabCorp's counsel that LabCorp will consent to removal and intends to file a consent and joinder to this notice of removal within its own 30-day period for removal. *See Barbour v. Int'l Union*, 640 F.3d 599, 613 (4th Cir. 2011) (en banc) (applying pre-2011 version of § 1446 and holding that "[i]f later-served defendants desire removal, they need only join a notice of removal that has been filed in compliance with the time requirements of § 1446(b) and within thirty days of the date they were served."); *see also infra* note 7.

served with a Summons and the Complaint on August 13, 2013. Defendant Quest Diagnostics Nichols Institute was served with a Summons and the Complaint on August 8, 2013.

## ALLEGATIONS OF THE COMPLAINT

5. The Complaint asserts two theories by which Quest's laboratory billing practices have allegedly violated the VFATA.[2]

6. First, in their "overcharge theory," Relators allege that Quest has knowingly made false claims for payment to the Virginia Medicaid program by submitting claims for payment that reflect prices higher than the maximum reimbursement rates allowed under Virginia Medicaid rules, which Relators assert establish a "lowest price" requirement. Compl. ¶¶ 6-7, 30-37.

7. Second, Relators allege a federal "pull through" theory of liability that hinges entirely on the interpretation and application of federal law. Relators allege that Quest "provided kickbacks in the form of deeply discounted private rates to draw in large volumes of 'pull through' Medicaid and other referrals." Compl. ¶ 28. Relators contend that these discounting practices constitute "independently unlawful" violations of the federal Anti-Kickback Statute, 42 U.S.C. § 1320a-7b ("AKS"), which rendered subsequent claims for payment submitted to Virginia "false," and thus actionable under the VFATA.

8. The Complaint repeatedly refers to the "pull through" theory, signifying the Relators' intent to rely substantially on alleged violations of the federal AKS as a basis for liability. Notably, the Complaint uses the term "pull through" a total of five times. Compl. ¶¶ 24, 28, 39. And, in several additional instances throughout the Complaint, while avoiding the specific term "pull through," Relators refer to this theory:

---

[2] Quest does not concede that the Complaint states a cause of action under any theory, and reserves all rights to challenge the sufficiency of all or any portion of the Complaint.

- as "deeply discounting . . . private fees to draw in lucrative Medicaid and other referrals" (Compl. ¶ 2);
- as an attempt "to attract new business from customers who have been receiving deep discounts" (Compl. ¶ 3);
- as a "common industry practice" of using deep discounts "to induce their customers to use a single commercial reference laboratory," upon which Quest "relies . . . to operate at a profit" (Compl. ¶ 24);
- as a billing practice by which Quest "depended, and continues to depend, on referrals . . . of large volumes of Medicaid and other testing business to cover the losses they would otherwise sustain in offering deeply discounted testing services." (Compl. ¶ 25); and
- as a tactic that Quest "instructed its sales personnel [to use]" in order to "capture . . . higher paying Medicaid and other referrals." Compl. ¶ 39.

## REMOVABILITY AND JURISDICTION

9.   This action is properly removable to this Court pursuant to 28 U.S.C. §§ 1441, 1331 and 1367, under which District Courts of the United States have either removal and original jurisdiction over causes of action that arise under the laws of the United States, or have supplemental jurisdiction over any state law cause of action that forms part of the same case or controversy as those claims that present a federal question.

10.   Based on the factual allegations of the Complaint relating to "pull through," which are construed as true for purposes of assessing removal jurisdiction, Relators have alleged a cause of action that "arises under" federal law. Relators' "pull through" theory "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005); *see also Pinney v. Nokia, Inc.*, 402 F.3d 430 (4th Cir 2005); *In re Capital One Derivative S'holder Litig.*, 1:12-CV-1100, 2012 WL 6725613 (E.D. Va. Dec. 21, 2012).

11.   Removal is appropriate under the first prong of the *Grable* test because the "pull through" allegations present questions of disputed federal law under the federal AKS that this

4

Court must necessarily resolve to determine whether certain claims are actionable.[3] Namely, Relators must show that Quest violated the federal AKS under their "pull through" theory to prove all required elements of the corresponding VFATA claims.[4]

12. Removal here also satisfies the second prong of the *Grable* test because the "pull through" allegations present substantial questions of federal law. Though Relators' claims are nominally based on the VFATA, resolving a cause of action based on the "pull through" theory will require the Court to consider and decide questions of pure federal law, including the interpretation of the bounds of the statutory provisions, definitions, and statutory and regulatory exceptions under the AKS.[5]

13. Removal is particularly appropriate in this case because of the strong federal interest in assuring that the AKS is interpreted consistently by federal authorities. Resolution of the "pull through" allegations, and the related determinations of whether AKS liability exists for those alleged practices, will necessarily implicate the interpretation and discretionary application of nationally-applicable federal health care regulations and corresponding policy determinations. These decisions have been reserved for federal regulatory and enforcement authorities such as the Department of Health and Human Services, Office of the Inspector General ("OIG") and the

---

[3] There can be no question that Relators' "pull through" theory is based on federal, and not state, law. Relators themselves cite to and rely on the federal AKS statute in the text of the Complaint. Compl. ¶ 28. In addition, Relators characterize these billing practices as "strictly prohibited by **Federal** health care programs." *Id.* (emphasis added).

[4] Quest contests these "pull through" allegations, and contests that those allegations constitute a violation of the AKS.

[5] As one example, certain statutory exceptions and regulatory safe harbors exist to guide health care providers in obtaining immunity from federal criminal and civil AKS prosecution when they are designing and implementing commercial arrangements. It is the *federal* agency, the Department of Health and Human Services, Office of the Inspector General, that has been charged with promulgating and interpreting these exceptions, which signals the significant federal interest in maintaining consistency in their interpretation.

5

U.S. Department of Justice ("DOJ").[6] Because the outcome of this case may effectively render unlawful what Relators claim are "common industry practices," these determinations may have conclusive and binding unforeseen effects upon other actors within the health care industry, and could hinder the ability of federal authorities to institute comprehensive policy choices consistent with the goals established by the federal government.

## COMPLIANCE WITH PROCEDURAL AND VENUE REQUIREMENTS OF THE REMOVAL STATUTE

14. Removal of the State Court Action is timely pursuant to 28 U.S.C. § 1446(b) (2007),[7] as this Notice is being filed with this Court within thirty (30) days after Quest was served with a copy of Relators' initial pleading setting forth the claims for relief upon which the action is based.

15. In accordance with 28 U.S.C. § 1446(a) (2007), a true and correct copy of the Complaint that has been served on Quest in the State Court Action is attached hereto as Exhibit 1. No other process, pleadings or orders have been served upon Quest in the State Court Action.

16. Pursuant to 28 U.S.C. § 1446(d) (2007), the Notice of Filing of Notice of Removal being filed with the Circuit Court of Fairfax County, Virginia is attached hereto as Exhibit 2.

---

[6] *See* Statement of Organization, Functions, and Delegations of Authority, 69 Fed. Reg. 127, 40,386 (July 2, 2004) (OIG established as "an independent and objective oversight unit" empowered to "lead[] and coordinate[] activities to prevent and detect fraud and abuse"); *Id.* at 40,388-89 (OIG responsible for "drafting and issuing advisory opinions to the health care industry . . . on whether an activity . . . would constitute grounds for the imposition of a sanction under the anti-kickback statute" and "provides legal advice to [OIG, HHS, and the DOJ] concerning matters involving the interpretation of the anti-kickback statute and . . . the applicability of the anti-kickback statute to various practices").

[7] Because the State Court Action commenced in 2007, the 2011 amendments to 28 U.S.C. § 1446 do not apply here. *See* 28 U.S.C. §§ 1332, 1446 (2011) Commentary on Effective Date of 2011 Amendment (amendments only apply to action commenced after effective date).

17. The prerequisites for removal under 28 U.S.C. § 1441 and § 1446 (2007) have been met. Should the propriety of removal be questioned, Quest requests the opportunity to brief the issues for the Court, and, if necessary, pursue related limited discovery. *See Brown v. Eli Lilly & Co.*, 654 F.3d 347 (2d Cir. 2011) (affirming decision to withhold ruling on removal until parties finished discovery and fully briefed relevant issues).

18. Pursuant to 28 U.S.C. § 1441(a), venue lies in, and Quest is properly removing this action to, the Alexandria Division of the Eastern District of Virginia because the Circuit Court of Fairfax County, Virginia, where the case was initially filed, is located in this federal judicial district and division.

19. As required by 28 U.S.C. § 1446(d) (2007), promptly after filing this Notice of Removal, Quest shall provide notice of removal to all parties.

20. In filing this Notice of Removal, Quest reserves all defenses to Relators' claims, including all defenses regarding lack of personal jurisdiction over any named defendant, and any other defenses pertaining to claims that Relators have named the wrong parties to this action.

Dated: September 9, 2013

Respectfully submitted,

DEFENDANTS QUEST DIAGNOSTICS INCORPORATED, QUEST DIAGNOSTICS NICHOL INSTITUTE, and QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC.,

By Counsel

_____
Nicholas D. SanFilippo (VA Bar No. 79018)
MCGUIREWOODS LLP
1750 Tysons Blvd.
Suite 1800
Tysons Corner, VA 22102
T: (703) 712-5378

F: (703) 712-5220
nsanfilippo@mcguirewoods.com

Robert W. Loftin (VA Bar No. 68377)
MCGUIREWOODS LLP
One James Center
901 East Cary Street
Richmond, VA 23219
T: (804) 775-4715
F: (804) 698-2177
rloftin@mcguirewoods.com

Richard D. Raskin (rraskin@sidley.com)
  (*pro hac vice* application to be filed)
Scott Stein (sstein@sidley.com)
  (*pro hac vice* application to be filed)
Allison W. Reimann (areimann@sidley.com)
  (*pro hac vice* application to be filed)
Bevin Seifert (bseifert@sidley.com)
  (*pro hac vice* application to be filed)
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
T: (312) 853-7000
F: (312) 853-7036

S. Craig Holden (scholden@ober.com)
  (*pro hac vice* application to be filed)
Kelly J. Davidson (kjdavidson@ober.com)
  (*pro hac vice* application to be filed)
OBER/KALER
100 Light Street
Baltimore, Maryland 21202
T: (410) 347-7322
F: (410) 685-1120

*Counsel for Defendants Quest Diagnostics Incorporated, Quest Diagnostics Nichols Institute, and Quest Diagnostics Clinical Laboratories, Inc.*

CH1 8026101v.5

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of September, 2013, a true copy of the foregoing was served on the following via electronic mail and first-class mail postage prepaid.

> Mark P. Friedlander
> FRIEDLANDER, FRIEDLANDER & EARMAN, P.C
> 1364 Beverly Road
> Suite 201
> McLean, Virginia 22101
> Telephone: 1-866-678-9493
> Facsimile: 703-893-9650
> mpfriedlander@verizon.net

> /s/ Nicholas D. SanFilippo
> Nicholas D. SanFilippo (VA Bar No. 79018)
> MCGUIREWOODS LLP
> 1750 Tysons Blvd.
> Suite 1800
> Tysons Corner, VA 22102
> T: (703) 712-5378
> F: (703) 712-5220
> nsanfilippo@mcguirewoods.com